# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

RUTH JARRETT-COOPER and EXCLUSIVE
EVENTS AND ACCOMODATIONS, LLC,

        Plaintiffs-Appellants,

v

UNITED AIRLINES, INC.,

        Defendant-Appellee.

UNPUBLISHED
September 19, 2017

No. 330248
Wayne Circuit Court
LC No. 14-007830-CZ

---

RUTH JARRETT-COOPER, also known as
RUTH JARRETT, also known as RUTH
COOPER, and EXCLUSIVE EVENTS &
ACCOMODATIONS, LLC,

        Plaintiffs-Appellants/Cross-
        Appellees,

and

BRYON TRICE, DELICIA JACKSON, URBAN
PLAYS, and ANGELA BARROW,

        Plaintiffs,

v

UNITED AIRLINES, INC.,

        Defendant-Appellee/Cross-
        Appellant.

No. 331383
Oakland Circuit Court
LC No. 2011-121175-CZ

---

RUTH JARRETT-COOPER and EXCLUSIVE
EVENTS AND ACCOMODATIONS, LLC,

        Plaintiffs-Appellants,

and

ERNEST JARRETT,

     Appellant,

v

UNITED AIRLINES, INC.,

     Defendant-Appellee.

No.  333353
Wayne Circuit Court
LC No.  14-007830-CZ

_____

RUTH JARRETT-COOPER, also known as
RUTH JARRETT, also known as RUTH
COOPER, EXCLUSIVE EVENTS &
ACCOMODATIONS, LLC,

     Plaintiffs-Appellants,

and

BRYON TRICE, DELICIA JACKSON, URBAN
PLAYS, and ANGELA BARROW,

     Plaintiffs,

v

UNITED AIRLINES, INC.,

     Defendant-Appellant.

No.  333836
Oakland Circuit Court
LC No.  2011-121175-CZ

_____

Before:  TALBOT, C.J., and O'CONNELL and CAMERON, JJ.

PER CURIAM.

These consolidated appeals involve two lower court cases that both stem from defendant, United Airlines, Inc.'s (United), cancellation of several airline tickets purchased by plaintiffs Ruth Jarrett-Cooper and Exclusive Events and Accomodations, LLC (Exclusive Events).[1] In

---

[1] Four additional parties joined Jarrett-Cooper and Exclusive Events as plaintiffs in their original complaint, but these parties do not appeal the Oakland Circuit Court's orders and their status as

Docket No. 330248, plaintiffs appeal as of right an order entered by the Wayne Circuit Court granting United's motion for summary disposition. In Docket No. 333353, plaintiffs challenge the Wayne Circuit Court's order granting United's motion for attorney fees under MCR 2.114(D). We vacate both orders and remand for further proceedings.

In Docket No. 331383, plaintiffs appeal as of right an order of no cause of action entered by the Oakland Circuit Court pursuant to a jury's verdict in plaintiffs' common-law negligence action. United cross-appeals the Oakland Circuit Court's denial of its motion for summary disposition on the issue of preemption. We affirm both orders.

In Docket No. 333836, plaintiffs appeal as of right the Oakland Circuit Court's order granting United's motion for taxation of costs and case evaluation sanctions. We vacate in part, and remand the matter to the Oakland Circuit Court for entry of an order consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Jarrett-Cooper is the owner and operator of Exclusive Events, which provides tour support services and facilitates travel arrangements for people involved in the entertainment industry. Plaintiffs first began experiencing problems with United in connection with two tickets Jarrett-Cooper purchased for a July 5, 2011 flight from Las Vegas to Atlanta (July 2011 transaction or tickets). When plaintiffs' clients, Bryon Trice and Delicia Jackson, arrived at the airport to check in for the flight, they learned that their tickets had been cancelled due to suspected credit card fraud. Jarrett-Cooper purchased the tickets with her own debit card and knew that there was no fraud involved in the transaction. She spoke with several United representatives over the following days in the effort to resolve whatever misunderstanding had caused United to suspect fraudulent activity, but her efforts were unsuccessful.

During the same time frame, plaintiffs were employed by playwright Angela Barrow to make travel arrangements for the cast of her play. Jarrett-Cooper purchased tickets for actors Clifton Powell and Anthony Grant to travel on a United flight from Los Angeles to Toronto on August 10, 2011 (August 2011 transaction or tickets). Barrow was paying for the travel costs directly and authorized plaintiffs to use her debit card to pay for the tickets. Although Jarrett-Cooper had yet to resolve the problem that arose with the July 2011 tickets, she did not anticipate that the issue would impact the new August 2011 transaction. However, when Jarrett-Cooper contacted United to change the date of the reservation at Barrow's request, she learned that the tickets had been cancelled, again, due to suspected credit fraud. Recognizing that there were no other common factors between the July 2011 and August 2011 transactions, she surmised that her involvement must have somehow triggered both cancellations. Unable to rectify the error with United, Jarrett-Cooper disclosed the problem to her clients so they would be forewarned that any tickets she procured from United might be unreliable until the unknown issue could be resolved. As a result of her disclosure, several clients stopped using plaintiffs' services or limited their requests to hotel and ground transportation arrangements.

litigants in the Oakland Circuit Court action is irrelevant to the issues presented on appeal. As such, all references to "plaintiffs" refer to Jarrett-Cooper and Exclusive Events only.

Plaintiffs filed their first complaint in the Oakland Circuit Court on August 19, 2011, alleging a host of legal theories against United. United removed the case to the United States District Court for the Eastern District of Michigan, where it remained pending while the parties engaged in discovery. During discovery, it was revealed that the suspicions prompting cancellation of the July 2011 and August 2011 tickets were not entirely related to those transactions. Rather, United's fraud detection system had "outsorted" or flagged the transactions based, in large part, on a cross-reference to an earlier transaction that had been deemed fraudulent by one of United's investigators and involved plaintiffs' email address, iBookHotels@gmail.com. In this first transaction, plaintiffs purchased tickets for actress Angela Winbush and her assistant, Anthony Hawkins, to fly from Houston to Chicago on May 17, 2010 (May 2010 transaction or tickets). The tickets were purchased with the authorized use of producer Michael Tinik's credit card. One of United's fraud investigators attempted to contact Tinik by phone to verify whether the purchase had been authorized. Tinik did not answer the call and, based on the information then available to her, the investigator deemed the transaction fraudulent. Although it is clear that Winbush and Hawkins were able to travel on the May 17, 2010 flight, there was conflicting evidence about whether they were required to purchase new tickets to do so.

On November 20, 2013, the district court entered an opinion and order addressing several motions.[2] In pertinent part, the district court denied plaintiffs' motion to amend their complaint for the purpose of adding several counts and granted United's motion for summary judgment with respect to each claim that plaintiffs had not voluntary dismissed. Plaintiffs appealed the district court's November 20, 2013 order to the Sixth Circuit Court of Appeals.

While the appeal was pending, plaintiffs filed a second action in the Wayne Circuit Court raising the claims that the district court determined could not be added to the original action, i.e., false light, falsely imputed criminal conduct, falsely imputed immoral conduct, and intentional infliction of emotional distress. On appeal, plaintiffs aver that they filed the Wayne Circuit Court complaint for the purpose of tolling the statute of limitations for these claims, and intended to "defer the decision about whether to proceed with the suit after filing it, by up to the 93 day life of the summons." Although plaintiffs did not serve United with the new summons and complaint, United discovered the existence of the second action and once again removed it to federal court before filing an answer and motion to dismiss.

On December 3, 2014, the Sixth Circuit Court of Appeals determined that the district court lacked jurisdiction over the first action because the amount in controversy did not meet the monetary threshold for diversity jurisdiction under 28 USC 1332.[3] Consistent with the Sixth Circuit's findings, the district court remanded both cases to their state court of origin.

---

[2] See *Jarrett-Cooper v United Air Lines, Inc*, unpublished opinion and order of the United States District Court, issued November 20, 2013 (Docket No. 11-13674).

[3] *Jarrett-Cooper v United Airlines, Inc*, 586 F Appx 214 (CA 6, 2014).

United sought summary disposition of plaintiffs' claims in the Wayne Circuit Court action, as well as an award of attorney fees and costs pursuant to MCR 2.114 for having to defend against what it characterized as a duplicative action. United argued that plaintiffs' second case should be dismissed pursuant to MCR 2.116(C)(6) because it was the same, or substantially the same, case as the one pending in the Oakland Circuit Court. At the hearing on United's motion, plaintiffs' counsel noted that the only claim that remained in the Oakland Circuit Court was for negligence, coupled with plaintiffs' related request for injunctive relief. After reviewing the complaints in each action, the Wayne Circuit Court found that there were no significant factual differences between them. It observed that plaintiffs asserted "additional claims" in the second action, but concluded that summary disposition of those claims was appropriate because their resolution would require consideration of the same operative facts giving rise to the Oakland Circuit Court action. Thus, the court dismissed plaintiffs' complaint and agreed that United was entitled to reasonable attorney fees pursuant to MCR 2.114(E).

Meanwhile, the parties engaged in extensive motion practice and continued discovery in the Oakland Circuit Court case. By the time the case proceeded to trial, plaintiffs' sole remaining cause of action was for negligence. At trial Jarrett-Cooper testified at length about her work history, the development of Exclusive Events's business and clientele, and the new business she anticipated before her problems with United arose. She also described each of the three transactions at issue in the case and the steps she took toward resolving the problem without litigation. On cross-examination, Jarrett-Cooper agreed that she was not a certified travel agent and that she booked tickets using United's public website rather than the proprietary system available to certified travel agents.

The deposition testimony of Paula Amador, United's fraud prevention group supervisor, was read into the record at trial. She testified that each transaction processed through United's public website was analyzed by a program called FraudNet, which assessed certain variables in each transaction for common signs of fraud. Each fraud variable was assigned a point value and when the total score reached a specified level, FraudNet outsorted the transaction for review by a fraud investigator. For example, points were assessed if the purchaser's billing address differed from the location of the billing phone number, or if there was a short period between the time of purchase and the travel date. Amador agreed that FraudNet's outsorting process did not establish fraud on its own, but explained that United's fraud investigators sometimes deemed a transaction fraudulent when they were unable to get further information to negate the suspicious, though limited, information available to United.

Another United employee, Travis LaForest, testified that he worked with FraudNet's developer when the program was first implemented at United. He also worked with United's website, including the purchase path for public users, in his then-current role in the e-commerce department. LaForest described the booking path, which included a section for passenger information and a section for payment information. In the passenger information section, the user is required to provide the passenger's name, date of birth, phone number, and email address. In the payment section, the user provides a credit card number, the expiration date, and the cardholder's name, address, and zip code. He agreed that the purchase path did not include a section for the cardholder's phone number, and confirmed that Amador's testimony to the contrary was inaccurate. With respect to the required field labeled "Email address for confirmation," in the passenger section, LaForest explained that the passenger's email address

should be provided. If the user wanted an itinerary sent to someone else, there was a second, optional field labeled "Share the itinerary (enter email address)" that could be used for that purpose. Jarrett-Cooper, on the other hand, testified that it was appropriate to put her own email address in the required field because she needed to receive the confirmation email. After receiving the confirmation, she prepared a complete travel itinerary for her clients.

LaForest also provided detailed testimony about the investigations that led to the ticket cancellations at issue in the case. With respect to the first investigation involving the May 2010 tickets, he identified the factors that caused FraudNet to outsort the transaction in the first place: the tickets were purchased only 15 hours before the flight was scheduled to depart; the cardholder lived in Michigan, but the passenger's phone number[4] was from California; the flight path, from Texas to Illinois, did not match any of the billing or passenger information; and two passengers purchased tickets in a short time frame using the same iBookHotels email address. LaForest also explained that the FraudNet record included notes from the investigator, Swati Jain, which reflected her investigation. According to the notes, Jain located the cardholder's phone number on a public directory website, but reached voicemail when she attempted to call him to verify whether the transaction was authorized. Jain also noted that the iBookHotels email address was "suspicious," and LaForest explained that fraudsters often use free email accounts with semiprofessional sounding names. Based on the totality of the information available to her, Jain marked the record with a "confirmed fraud" notation.

The factors that weighed into United's decision to cancel the July 2011 tickets included: the iBookHotels email address, which had been previously rejected for fraud; a discrepancy between the Michigan billing address and Florida phone number; the high dollar value of the purchase; and the one-way flight path itself—from Las Vegas to Atlanta—because both cities had particularly high rates of fraudulent activity. Similar factors were taken into account when the August 2011 tickets were cancelled, namely, the negative history with the iBookHotels email address, and the inconsistency between the Michigan billing address and phone number and the Los Angeles to Toronto flight path. The tickets were once again purchased with a debit card, this time belonging to Angela Barrow, so no attempts were made to verify the purchase with the cardholder. After brief deliberations, the jury returned a unanimous no cause of action verdict in United's favor.

## II. DOCKET NOS. 330248 AND 333353 – WAYNE CIRCUIT COURT PROCEEDINGS

### A. SUMMARY DISPOSITION

Plaintiffs first argue that the Wayne Circuit Court erred by granting United's summary disposition motion pursuant to MCR 2.116(C)(6). We agree.

---

[4] LaForest refers to the passenger's phone number as the billing phone number, but later explains that the FraudNet field labeled as the billing phone number actually corresponds with the passenger phone number entered in the purchase path.

We review de novo a trial court's grant of summary disposition under MCR 2.116(C)(6), considering the record as it existed at the time of the ruling.[5] A trial court ruling upon a summary disposition motion under subrule (C)(6) should consider the "affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties."[6] A party can move for summary disposition under MCR 2.116(C)(6) if "[a]nother action has been initiated between the same parties involving the same claim." Relying on this rule, United moved for summary disposition in the Wayne Circuit Court, arguing that an identical action was already pending in the Oakland Circuit Court. The Wayne Circuit Court agreed that there were no significant factual differences between plaintiffs' complaints and granted United's motion, reasoning that resolution of the claims before it would require consideration of the same facts giving rise to the Oakland Circuit Court action. In reaching this decision, the Wayne Circuit Court relied on *JD Candler Roofing Co, Inc v Dickson*,[7] which held that another action involves "the same claim" for purposes of MCR 2.116(C)(6) when both lawsuits are "based upon the same or substantially the same cause of action." Although the Wayne Circuit Court only cited *JD Candler* in support of its ruling, we note that the quoted language derives from *Ross v Onyx Oil & Gas Corp*.[8]

However, neither *JD Candler* nor *Ross* is precedentially binding upon this Court, as both were decided by panels of the Court of Appeals before November 1, 1990.[9] Moreover, the rule of law articulated in those cases is inconsistent with the unambiguous language of MCR 2.116(C)(6). When called upon to construe a court rule, this Court applies general principles of statutory construction.[10] "Accordingly, we begin with the plain language of the court rule. When that language is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation. Similarly, common words must be understood to have their everyday, plain meaning."[11] By allowing dismissal of a subsequent action that is based upon *substantially the same* cause of action, the *JD Candler* and *Ross* Courts ignored the plain language of MCR 2.116(C)(6) to read language into the court rule that is conspicuously absent.[12]

---

[5] *Planet Bingo, LLC v VKGS, LLC*, ___ Mich App ___; ___ NW2d ___ (2017) (Docket No. 328896); slip op at 5.

[6] MCR 2.116(G)(5).

[7] *JD Candler Roofing Co, Inc v Dickson*, 149 Mich App 593, 598; 386 NW2d 605 (1986).

[8] *Ross v Onyx Oil & Gas Corp*, 128 Mich App 660, 666; 341 NW2d 783 (1983).

[9] MCR 7.215(J)(1).

[10] *Valeo Switches & Detection Systems, Inc v Emcom, Inc*, 272 Mich App 309, 311; 725 NW2d 364 (2006).

[11] *Id*. at 311, quoting *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004).

[12] *JD Candler*, 149 Mich App at 598, quoting *Ross,* 128 Mich App at 666 (emphasis added).

The proper interpretation of the "same claim" language in MCR 2.116(C)(6) was recently addressed by this Court in *Esch v Yacob*.[13] While the unpublished opinion in *Esch* also lacks precedential authority,[14] it may be considered as instructive or persuasive.[15] According to *Esch*,

> [*JD Candler* and *Ross*'s] definition of the phrase "the same claim" in MCR 2.116(C)(6) . . . does not comport with Michigan Supreme Court precedent defining the word "the." In *Robison v Detroit*, 462 Mich 439, 461; 613 NW2d 307 (2000), quoting *Hagerman v Gencorp Auto*, 457 Mich 720, 753-754; 579 NW2d 347 (1998), the Court held that "the" is a " ' "definite article" . . . as opposed to the indefinite or generalizing force of the indefinite article a or an[.]' " Using this definition to interpret the phrase "the proximate cause" in MCL 691.1407(2)(c) of the governmental immunity act, the Court reasoned: "Further, recognizing that 'the' is a definite article, and 'cause' is a singular noun, it is clear that the phrase 'the proximate cause' contemplates *one* cause." *Robinson*, 462 Mich at 462 (emphasis in original). According to this precedent, the phrase "the same claim" must be read narrowly as the one and only same claim. To merit dismissal under MCR 2.116(C)(6), the claim in the pending and current actions must actually be the same and not merely "substantially the same."[16]

This interpretation of the phrase "the same claim" rests on a sound application of statutory construction principles and gives meaning to the plain language of the court rule.

In light of this interpretation, the Wayne Circuit Court erred by granting United's motion for summary disposition. Importantly, "MCR 2.116(C)(6) does not operate where another suit between the same parties involving the same claims is no longer pending at the time the motion is decided."[17] Although plaintiffs' initial complaint in the Oakland Circuit Court action originally asserted nine different claims against United, only plaintiffs' negligence claim and related request for injunctive relief remained in the Oakland Circuit Court action by the time the Wayne Circuit Court ruled on United's motion. Despite the nearly identical factual assertions set forth in the complaints, plaintiffs' Wayne Circuit Court complaint alleged causes of action for intentional infliction of emotional distress, false light invasion of privacy, falsely imputed criminal conduct, and falsely imputed immoral conduct. While each of these claims undoubtedly arises from the same circumstances at issue in the Oakland Circuit Court action, none can be construed as the same negligence claim pending in that case.

---

[13] *Esch v Yacob*, unpublished opinion per curiam of the Court of Appeals, issued June 13, 2017 (Docket No. 332933).

[14] MCR 7.215(C)(1).

[15] *Johnston v Sterling Mtg & Investment Co*, 315 Mich App 724, 759; 894 NW2d 121 (2016).

[16] *Esch*, unpub op at 8-9.

[17] *Fast Air, Inc v Knight*, 235 Mich App 541, 545; 599 NW2d 489 (1999).

In a negligence action, the plaintiff must prove that the defendant breached a duty owed to the plaintiff and that the defendant's breach caused the plaintiff's damages.[18] The fact-finder generally applies a reasonableness standard; if the defendant failed to exercise "the care that a reasonably careful person would use under the circumstances," his or her conduct can be considered negligent.[19] According to plaintiffs' first amended complaint in the Oakland Circuit Court action, the basis for their negligence claim was United's wrongful cancellation of legitimately purchased airline tickets. Thus, plaintiffs were required to prove that United did not exercise the care that a reasonable business would have used under the circumstances when it cancelled the tickets purchased by plaintiffs and that United's actions caused plaintiffs to sustain damages.

The precise nature of plaintiffs' "false imputation" claims is unclear from their complaint, which merely states that United "falsely imputed criminal conduct by the Plaintiffs" and "falsely imputed immoral conduct by the Plaintiffs." But whether sounding in defamation or injurious falsehood, the conduct that gives rise to these types of claims involves publication of a false, harmful statement.[20] Likewise, a false light invasion of privacy tort claim involves publication of false and objectionable information to the public at large.[21] As such, plaintiffs' proofs for these claims would necessarily involve some communication of misinformation made by United to third-parties. By contrast, plaintiffs' negligence claim focused on United's ticket cancellations, regardless of whether United communicated the cancellations to one or more third-parties. Plaintiffs' intentional infliction of emotional distress claim is also distinguishable, as it rests on United's actions after receiving certain information during discovery, rather than United's prelitigation ticket cancellations. The causes of action raised in plaintiffs' Wayne Circuit Court case involve different theories of liability, focus on different conduct, and require different elements of proof. In other words, plaintiffs' claims in the Wayne Circuit Court action were not *the same* as plaintiffs' Oakland Circuit Court negligence claim, even if the circumstances surrounding them were substantially similar. Accordingly, the Wayne Circuit Court erred by granting United's motion for summary disposition on the basis of MCR 2.116(C)(6).

## B. ATTORNEY FEES

Next, plaintiffs and their attorney argue that the Wayne Circuit Court erred by awarding United attorney fees pursuant to MCR 2.114, based on plaintiffs failure to comply with the

---

[18] *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000).

[19] *Id*. at 6-7.

[20] *Lakin v Rund*, 318 Mich App 127, 133; 896 NW2d 76 (2016) (identifying "a false and defamatory statement concerning the plaintiff" and "an unprivileged communication to a third party" as two elements of a defamation claim); *Arim v Gen Motors Corp*, 206 Mich App 178, 197-198; 520 NW2d 695 (1994) (discussing false statements at issue in injurious falsehood claim).

[21] *Porter v Royal Oak*, 214 Mich App 478, 486-487; 542 NW2d 905 (1995).

certification requirement in MCR 2.113(C)(2).[22] However, the Wayne Circuit Court determined that United was entitled to attorney fees at the time it ruled on United's summary disposition motion and it was not until plaintiffs filed their response to United's subsequent motion for fees that they argued that a purported violation of MCR 2.113(C)(2) was not sanctionable under MCR 2.114. By challenging the propriety of awarding any fees in their response to a motion that was concerned only with determining the amount of fees to be awarded, plaintiffs were essentially moving for reconsideration of the court's earlier ruling. This untimely request for reconsideration did not properly preserve the issue for review.[23] Plaintiffs also challenge the amount of fees awarded on several grounds, which were timely raised in, and addressed and decided by, the Wayne Circuit Court. Thus, this aspect of plaintiffs' claim of error is preserved.[24]

We review a trial court's award of attorney fees for an abuse of discretion, which occurs "when the trial court's decision is outside the range of reasonable and principled outcomes."[25] The trial court's factual findings supporting its decision are reviewed for clear error.[26] "A finding is clearly erroneous if, after a review of the record, this Court is left with a definite and firm conviction that a mistake was made."[27] This Court reviews de novo issues involving the interpretation of court rules.[28] To the extent that plaintiff's argument on appeal is unpreserved, our review is limited to plain error affecting substantial rights.[29] "To avoid forfeiture under the

---

[22] MCR 2.113(C)(2) states:

The caption of a complaint must also contain either (a) or (b) as a statement of the attorney for the plaintiff, or of a plaintiff appearing without an attorney:

(a) There is no other pending or resolved civil action arising out of the transaction or occurrence alleged in the complaint.

(b) A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in [this court]/[_____ Court], where it was given docket number _____ and was assigned to Judge _____. The action [remains]/[is no longer] pending.

[23] *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009).

[24] *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005).

[25] *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 551-552; 886 NW2d 113 (2016).

[26] *Sprenger v Bickle*, 307 Mich App 411, 423; 861 NW2d 52 (2014).

[27] *Fette v Peters Constr Co*, 310 Mich App 535, 549; 871 NW2d 877 (2015).

[28] *Sprenger*, 307 Mich App at 423.

[29] *In re Smith Trust*, 274 Mich App 283, 285; 731 NW2d 810 (2007).

plain error rule, three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights."[30]

The claims of error presented by plaintiffs and their attorney with respect to this issue are premised on their belief that the Wayne Circuit Court awarded attorney fees under MCR 2.114(E) based solely on plaintiffs' failure to comply with the caption certification requirement set forth in MCR 2.113(C)(2). Thus, the merit of these claims of error depend on whether the Wayne Circuit Court awarded attorney fees to United due to plaintiffs' noncomplying caption certification.

In its motion for summary disposition, United requested an award of attorney fees pursuant to MCR 2.114(E). United averred that it was entitled to reasonable attorney fees because the Wayne Circuit Court action was filed "to harass United, cause unnecessary litigation, and increase United's legal fees." As evidence of plaintiffs' bad faith, United noted that plaintiffs' second complaint began with a misleading certification stating, "There is no civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint *pending in this court . . . .*"[31] United argued that plaintiffs purposely manipulated the language of the certification required by MCR 2.113(C)(2) to conceal the related Oakland Circuit Court action. At the hearing on United's motion, the court did not make any factual findings specific to United's request for sanctions. Instead, after comparing plaintiffs' complaints, it said,

> While Plaintiff[s] might have asserted additional claims in the instant action, the resolution of these claims will require the Court to consider the same facts giving rise to the first action Plaintiff[s] filed that is currently pending in Oakland County. Accordingly, the Court will dismiss this action without prejudice and award reasonable attorney fees pursuant to MCR MCR [sic] 2.114(E).

It is evident from this statement that the court determined that United was entitled to attorney fees for the same reason that it was entitled to summary disposition, i.e., that plaintiffs improperly filed the Wayne Circuit Court action when another action had been initiated between the same parties involving the same claims. This conclusion is supported by the fact that the court directed United to "submit a motion setting forth the costs and attorney fees it has incurred *in defense of this action.*"[32] Additionally, the only time the court referred to MCR 2.113(C)(2) or plaintiffs' caption was when it summarized United's arguments.

For the reasons already explained, the trial court erred by dismissing plaintiffs' action under MCR 2.116(C)(6) because it did not involve the same claims then pending in the Oakland Circuit Court. As such, the court's related decision to grant United's request for attorney fees on the basis of the duplicative complaint amounts to plain error. This error affected the substantial rights of plaintiffs' counsel because he was ordered to pay significant attorney fees for filing a

---

[30] *Id.* at 285-286 (internal quotation marks and citation omitted).

[31] Emphasis added.

[32] Emphasis added.

document in violation of MCR 2.114. Because the court's plain error affected counsel's substantial rights, its order granting United's motion for attorney fees must be reversed.[33] Reversal of the court's order renders plaintiffs' remaining arguments regarding the attorney fees awarded to United moot.[34]

## III. DOCKET NOS. 331383 AND 333836 – OAKLAND CIRCUIT COURT PROCEEDINGS

### A. DAMAGES FOR MENTAL AND EMOTIONAL DISTRESS

Next, plaintiffs argue that the Oakland Circuit Court erred by precluding Jarrett-Cooper from recovering damage for mental and emotional distress in the negligence action. We disagree.

We review a trial court's decision regarding a summary disposition motion de novo.[35] "A motion made under MCR 2.116(C)(10) tests the factual support for a claim, and should be granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[36] The Court should consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party . . . ."[37] "A genuine issue of material fact exists when the record, drawing all reasonable inferences in favor of the nonmoving party, leaves open an issue upon which reasonable minds could differ."[38]

In its second motion for summary disposition in the Oakland Circuit Court, United argued that Jarrett-Cooper's negligence action must fail because she could not establish that she personally suffered any damages arising from United's conduct. According to United, the pecuniary losses resulting from the ticket cancellations belonged to Exclusive Events, and Jarrett-Cooper could not recover damages for emotional distress in a "run-of-the-mill negligence claim." Citing *Daley v LaCroix*,[39] the Oakland Circuit Court agreed that Jarrett-Cooper could not recover damages for emotional distress because she had not presented any evidence demonstrating physical manifestations of such distress. On appeal, plaintiffs argue that the trial court erred because *Daley* did not bar recovery of damages for emotional injuries as a matter of

---

[33] *Id*. at 285.

[34] *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010) (stating that an issue is moot if its resolution cannot have a practical effect on the existing controversy).

[35] *Nuculovic v Hill*, 287 Mich App 58, 61; 783 NW2d 124 (2010).

[36] *Id*. (citations omitted).

[37] *Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 437; 824 NW2d 318 (2012) (citation omitted).

[38] *Nuculovic*, 287 Mich App at 62.

[39] *Daley v LaCroix*, 384 Mich 4; 179 NW2d 390 (1970).

law in every negligence action. We agree that the Oakland Circuit Court's reliance on *Daley* was somewhat misplaced.

In *Daley*, the Supreme Court was called upon to consider whether Michigan should continue to adhere to the "impact rule," which barred recovery for mental or emotional injuries resulting from negligent conduct that did not directly cause a physical impact on the plaintiff.[40] After reviewing the development of the impact rule and several reasons for its repudiation, the Court abandoned the rule in favor of the following principle: "[W]here a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock."[41] In other words, a negligence action was no longer precluded merely because a plaintiff's physical injury was caused by a mental or emotional disturbance, rather than a defendant's negligent impact with the plaintiff's body. Because Jarrett-Cooper did not seek to recover for a physical injury that was produced as a result of negligently inflicted emotional distress, *Daley*'s repudiation of the impact rule has no bearing on Jarrett-Cooper's right to recover emotional damages in this case.

Nonetheless, while the holding in *Daley* does not compel the conclusion that Jarrett-Cooper was unable to recover emotional damages in her negligence action, the Oakland Circuit Court did not err in reaching that result. In discussing the genesis of the impact rule, the *Daley* Court recalled that "[r]ecovery for mental disturbance caused by [a] defendant's negligence, but without accompanying physical injury or physical consequences or any independent basis for tort liability, has been generally denied . . . ."[42] Here, Jarrett-Cooper alleged an independent basis for liability, namely, the injury to Exclusive Events's business interests caused by United's ticketing practices. Importantly, her membership interest in Exclusive Events is a personal property interest.[43] Thus, any emotional damages she may have suffered flow from harm inflicted upon her personal property, and Michigan common law does not allow recovery of noneconomic damages arising from negligent property damage.[44] Because the Oakland Circuit Court correctly

---

[40] *Id*. at 8-11.

[41] *Id*. at 12-13.

[42] *Id*. at 8.

[43] See *Allard v Allard*, 499 Mich 932 (2016) (stating that a member's interest in a limited liability company is personal property).

[44] See generally *Price v High Pointe Oil Co, Inc*, 493 Mich 238; 828 NW2d 660 (2013) (finding that the general rule regarding measure of damages for property damage controls over less specific general tort principle allowing recovery of noneconomic damages in tort claims). See also *Koester v VCA Animal Hosp*, 244 Mich App 173, 176; 624 NW2d 209 (2000) ("There is no Michigan precedent that permits the recovery of damages for emotional injuries allegedly suffered as a consequence of property damage.").

concluded that Jarrett-Cooper was not entitled to recover emotional damages in her negligence action, albeit for the wrong reason, she is not entitled to relief.[45]

The cases relied upon by plaintiffs on appeal are distinguishable. In *Phillips v Butterball Farms Co, Inc (On Second Remand)*,[46] the plaintiff was able to recover damages for mental and emotional distress in an action for wrongful discharge from employment. However, the plaintiff's tort claim in *Phillips* involved a statutory right under the Worker's Disability Compensation Act, rather than common-law negligence.[47] Likewise, the Court's reference to the scope of actual damages in typical tort cases in *Phinney v Perlmutter*[48] was made in the context of a fraud claim, rather than an action sounding in common-law negligence. Moreover, while both cases involved interference with the plaintiffs' employment, they also involved conduct best characterized as intentional, as opposed to the negligent activities that gave rise to plaintiffs' only triable cause of action.[49]

## B. LEAVE TO AMEND COMPLAINT

Next, plaintiffs argue that the Oakland Circuit Court erred by denying plaintiffs' motion for leave to amend their complaint. We disagree.

We review a trial court's decision regarding leave to amend pleadings for an abuse of discretion, which occurs when the decision "results in an outcome that falls outside the range of principled outcomes."[50] Whether to allow amendment of a pleading falls within the sound discretion of the trial court.[51] However, because the Michigan Court Rules dictate that leave should be "freely given when justice so requires,"[52] leave to amend is "generally a matter of right rather than of grace."[53] As such, leave to amend "should ordinarily be denied only for

---

[45] *Neville v Neville*, 295 Mich App 460, 470; 812 NW2d 816 (2012) ("This Court . . . will not reverse when a trial court reaches the right result for a wrong reason.").

[46] *Phillips v Butterball Farms Co, Inc (On Second Remand)*, 448 Mich 239, 252-253; 531 NW2d 144 (1995).

[47] *Id*. at 248.

[48] *Phinney v Perlmutter*, 222 Mich App 513, 531-532; 564 NW2d 532 (1997), overruled on other grounds by *Garg v Macomb Co Mental Health Servs*, 472 Mich 263; 696 NW2d 646 (2005).

[49] *Phillips*, 448 Mich at 251-252 (allowing recovery of emotional damages for retaliatory discharge); *Phinney*, 222 Mich App at 533-534 (reasoning that award of consequential damages was supported by requirement of culpable intent).

[50] *Decker v Rochowiak*, 287 Mich App 666, 681; 791 NW2d 507 (2010).

[51] *Id*. at 681-682.

[52] MCR 2.118(A)(2).

[53] *In re Kostin*, 278 Mich App 47, 52; 748 NW2d 583 (2008).

particularized reasons such as undue delay, bad faith or dilatory motive, repeated failures to cure by amendments previously allowed, or futility."[54]

After the Oakland Circuit Court entered the order precluding Jarrett-Cooper from recovering emotional damages in her negligence claim, plaintiffs sought leave to amend their complaint to add a request for exemplary damages to their prayer for relief. Plaintiffs argued that exemplary damages were warranted in light of the court's prior ruling because they are designed to "supply a remedy for mental injuries which [are] not otherwise recognized as recoverable within the scope of a particular cause of action." The Oakland Circuit Court opined that plaintiffs were merely attempting to reinstate their emotional distress damages and denied the motion for the following reasons:

> (1) undue delay (this matter has been pending since 2011); (2) "repeated failure to cure deficiencies by amendments previously allowed;" (3) undue prejudice to the opposing party (trial is currently set for October 12, 2015; discovery is closed; and dispositive motion cut-off is past); and (4) futility of the amendment (plaintiffs failed to demonstrate that defendant acted malicious or so willful and wanton as to demonstrate a reckless disregard of plaintiff's rights).

The majority of the reasons cited by the Oakland Circuit Court are unconvincing. The court correctly observed that the action had been pending for over four years before plaintiffs sought to add a request for exemplary damages to their prayer for relief. However, delay is not typically an appropriate basis for denying leave to amend in the absence of additional factors.[55] The court's second reason for denying leave to amend, "repeated failure to cure deficiencies by amendments previously allowed," exaggerates the history of plaintiffs' pleadings. Plaintiffs amended their complaint once, with United's consent. Plaintiffs' single amendment was apparently designed to narrow plaintiffs' theories of liability, not to alter the types of damages plaintiffs sought. In fact, the nature of plaintiffs' first amendment also belies the applicability of the court's third rationale for denying leave to amend—"undue prejudice." Prejudice "exists if the amendment would prevent the opposing party from receiving a fair trial, if for example, the opposing party would not be able to properly contest the matter raised in the amendment . . . ."[56] Although it was true that trial was fast approaching and the time for discovery and dispositive motions had passed, United was aware from the start that plaintiffs were seeking compensation for injuries that included "[a]nxiety, emotional distress, embarrassment and humiliation." This understanding was emphasized when plaintiffs filed their amended complaint to narrow their allegations down to five causes of action, including intentional infliction of emotional distress, negligent infliction of emotional distress, and common-law negligence (which plaintiffs averred caused economic *and noneconomic* damages). Thus, to the extent that plaintiffs could rightfully recover for mental injuries by way of exemplary damages, United would not have been

---

[54] *Decker*, 287 Mich App at 682 (citation omitted).

[55] *Id*.

[56] *Id*. (citation omitted).

prejudiced because it had prepared its case for the better part of four years with the full knowledge that such injuries might be at issue.

However, while the court's first three reasons, viewed in isolation, did not adequately support its denial of plaintiffs' motion, the court correctly concluded that the proposed amendment was unwarranted on the basis of futility. Exemplary damages may be awarded to compensate for "intangible injuries or injuries to feelings, which are not quantifiable in monetary terms" but are necessary to make the injured party whole.[57] Additionally, unlike emotional damages in the traditional sense, exemplary damages can be awarded to a corporate entity that has suffered an unquantifiable injury.[58] But the ability to recover exemplary damages is not widely available. The conduct giving rise to the injury must be "malicious or so wilful and wanton as to demonstrate a reckless disregard of plaintiff's rights."[59] It is "the reprehensibility of the defendant's conduct [that] both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings."[60] Here, plaintiffs' claim for exemplary damages arises from United's general ticketing practices and, more specifically, its fraud investigation practices. Even if this Court assumed, without deciding, that the procedures employed by United in this regard were ill advised, United's actions were a far cry from malicious, willful, or wanton. Indeed, the very fact that plaintiffs' only triable claim was for common-law negligence, rather than an intentional tort, negates the mental element required for an award of exemplary damages.[61] Because plaintiffs did not demonstrate that they were entitled to exemplary damages, their requested amendment would not have served any legitimate purpose. As such, the trial court properly denied their motion for leave to amend their complaint on the basis of futility.

## C. EVIDENTIARY RULINGS AND TRIAL SCHEDULE

Next, plaintiffs take issue with a number of the Oakland Circuit Court's rulings regarding the organization of their exhibits, the trial schedule and time limitations imposed on certain aspects of the trial, and the admissibility of deposition and live testimony. We will not reiterate or address each of plaintiffs' lengthy arguments because, even if we found merit in their asserted claims of error, reversal is only warranted if a substantial right of a party was affected or failure to grant relief would be inconsistent with substantial justice.[62] On appeal, plaintiffs have made

---

[57] *Unibar Maintenance Servs, Inc v Saigh*, 283 Mich App 609, 630; 769 NW2d 911 (2009).

[58] *Id*. (noting that exemplary damages have been properly awarded to compensate a corporation that "suffered a loss of reputation as a skillful and competent company").

[59] *McPeak v McPeak*, 233 Mich App 483, 487-488; 593 NW2d 180 (1999).

[60] *Id*. at 488.

[61] See *Veselenak v Smith*, 414 Mich 567, 575; 327 NW2d 261 (1982) ("Due to the required mental element, negligence is not sufficient to justify an award of exemplary damages.")

[62] MRE 2.613(A) ("An error in the admission or the exclusion of evidence, an error in a ruling or order, or an error or defect in anything done or omitted by the court or by the parties is not

only vague assertions about how the Oakland Circuit Court's purported errors prejudiced them. For example, they contend that the court's pretrial ruling regarding the organization of their exhibits precluded them from introducing "a great number" of potential exhibits, but fail to identify any particular materials they were unable to introduce or explain why the absence of that evidence affected the proceedings. Similarly, plaintiffs claim that they were prejudiced by the court's exclusion of testimony from Nathanial Smith, but they did not make an offer of proof concerning the nature of Smith's proposed testimony. Because plaintiffs have failed to demonstrate how the court's pretrial and evidentiary rulings prejudiced them in a meaningful way, we cannot conclude that the trial court's alleged errors warrant relief.

## D. JUDGMENT NOTWITHSTANDING THE VERDICT OR NEW TRIAL

Next, plaintiffs challenge the Oakland Circuit Court's denial of their motion for judgment notwithstanding the verdict or a new trial. They argue that the court erred by denying their motion because the jury's verdict was against the great weight of the evidence. We disagree.

We review a trial court's ruling regarding a motion for judgment notwithstanding the verdict de novo.[63] "In reviewing a decision regarding a motion for JNOV, this Court must view the testimony and all legitimate inferences that may be drawn therefrom in a light most favorable to the nonmoving party."[64] "If reasonable jurors could have honestly reached different conclusions, the jury verdict must stand."[65] A motion for judgment notwithstanding the verdict should be granted "only when there was insufficient evidence presented to create an issue of fact for the jury."[66]

A trial court's denial of a motion for a new trial is reviewed for an abuse of discretion.[67] When the moving party maintains that a jury's verdict was against the great weight of the evidence, the trial court should consider "whether the overwhelming weight of the evidence favors the losing party."[68] A jury's verdict will not be disturbed if there is competent evidence to

---

ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.") See also *Lewis v LeGrow*, 258 Mich App 175, 200; 670 NW2d 675 (2003).

[63] *Morinelli v Provident Life & Accident Ins Co*, 242 Mich App 255, 260; 617 NW2d 777 (2000).

[64] *Id*. at 260-261.

[65] *Id*.

[66] *Heaton v Benton Const Co*, 286 Mich App 528, 632; 780 NW2d 618 (2009).

[67] *Morinelli*, 242 Mich App at 261.

[68] *Id*.

support it.[69]  This Court gives substantial deference to the trial court's conclusion that the verdict was not against the great weight of the evidence.[70]

After brief deliberations, the jury returned a unanimous verdict in favor of United, answering the first question on the special verdict form—"Was United negligent?"—in the negative.  The Oakland Circuit Court rejected plaintiffs' subsequent motion for judgment notwithstanding the verdict or a new trial.  On appeal, plaintiffs argue that the court erred in this respect because the evidence overwhelmingly established that United negligently "confirmed" fraud that never occurred.  In support of this position, plaintiffs direct this Court to evidence and testimony that undermined the adequacy of United's general fraud investigation practices, as well as the specific investigations that resulted in cancellation of tickets purchased by plaintiffs.  Although we recognize the efforts plaintiffs took at trial to attack United's policies, their position ignores the long-standing principle that whether a defendant's actions were negligent involves a question of fact that should be resolved by the jury in all but the most extreme circumstances.[71]

As a general rule, negligence is measured by a "reasonable care" standard, which means "the care that a reasonably careful person would use under the circumstances."[72]  The concept is fluid and recognizes that any number of factors can impact the reasonableness of a course of conduct.  As stated by the United States Supreme Court,

> There is no fixed standard in the law by which a court is enabled to arbitrarily say in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances.  The terms "ordinary care," "reasonable prudence," and such like terms, as applied to the conduct and affairs of men, have a relative significance, and cannot be arbitrarily defined.  What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence.  The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men, under a similar state of affairs.[73]

In this case, United presented evidence from which the jury could, and did, conclude that its investigation of the subject transactions was consistent with what a reasonable business would have done under the circumstances.  Indeed, United's sole defense witness, LaForest, explained

---

[69] *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 498; 668 NW2d 402 (2003).

[70] *Morinelli*, 242 Mich App at 261.

[71] *McKinney v Yelavich*, 352 Mich 687, 691-692; 90 NW2d 883 (1958).

[72] *Case*, 463 Mich at 6-7 (footnote omitted).

[73] *Id*. at 10, quoting *Grand Trunk R Co of Canada v Ives*, 144 US 408, 417; 12 S Ct 679; 36 L Ed 485 (1892).

the rationale for United's fraud detection policies and offered testimony which, if credited by the jury, explained or negated every purported failing identified by plaintiffs.

Plaintiffs' arguments regarding the weight of the evidence adduced at trial can be grouped into three general categories, the first of which relates to the functioning of FraudNet. Plaintiffs argue that FraudNet misinterprets information that is accurately provided through United's online purchase path to find mismatches in every transaction in which the purchaser and the passenger are not the same person. For example, FraudNet identifies the area code from the passenger's phone number as a "billing" area code and compares it to the cardholder's billing zip code. Although this would not be unusual if the passenger and purchaser were different people, FraudNet still flags a mismatch. However, LaForest explained that the field labels in FraudNet are imperfect because FraudNet was not designed specifically for airlines. He further testified that United's fraud investigators understand that the "billing" phone number field corresponds to the passenger phone number field in the booking path. Amador, on the other hand, testified that the purchase path requires entry of the purchaser's phone number. But LaForest explained that in her role as department supervisor, Amador would not be familiar with how FraudNet functioned. This left a question of witness credibility, which is an issue best left to the jury.[74] Moreover, LaForest also explained that it is appropriate for FraudNet to consider differing information in these fields as a mismatch because in the typical legitimate transaction, they will be the same. It would be reasonable for the jury to credit this rationale given the evidence that United's website was designed for use by the general public, rather than professionals in the business of arranging transportation for third parties.

Plaintiffs also note that FraudNet mislabels the email address entered in the purchase path as the purchaser's email, when there is no option to enter an email address in the online payment section. This is of little import because plaintiffs' email address was not flagged because of its relationship to the purchaser. Rather, the email address was noted in the May 2010 transaction because it was connected to two different purchases in a short time frame, both of which were suspicious for other reasons, and it was noted in the July 2011 and August 2011 transactions because of its relationship to the previously rejected May 2010 tickets.

The next general category of evidence that plaintiffs take issue with relate to the adequacy of the fraud investigators training and United's interdepartmental communication. LaForest agreed that the department did not have written policies or procedures, and plaintiffs characterize this admission as evidence that United negligently allowed the department to operate on a "haphazard, unsophisticated and ad hoc basis." This conclusion exaggerates LaForest's testimony. Despite the lack of written policies or procedures, new investigators are paired with senior investigators for one-on-one training to learn how to evaluate factors presented by FraudNet. They also participate in group training with a fraud analyst (the position previously held by LaForest).

Plaintiffs also argue that it was unreasonable for United to "confirm" fraud in connection with the May 2010 transaction because United had corporate knowledge that would have

---

[74] *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 544; 854 NW2d 152 (2014).

dispelled any suspicions of fraud had it been considered. That is, Jarrett-Cooper had regularly communicated with United's group reservation department, explaining the nature of her business each time, and had even purchased tickets for Winbush and Hawkins using Tinik's credit card before the time that the May 2010 tickets were reviewed for fraud. But according to LaForest, the fraud department and group reservation department operate completely independent of one another. Group reservations are booked over the phone with the assistance of a United representative, using the same proprietary ticketing system available to licensed travel agents. Importantly, transactions processed through the proprietary system are not reviewed by FraudNet because they have presumably already been vetted by the booking agent. As such, the fraud investigators would not have access to that purchase history.

The final category of evidence plaintiffs cite in support of their claim of error relates to the actual investigations that lead to ticket cancellations. Plaintiffs' maintain that the investigators' efforts to verify the legitimacy of the purchases were inadequate. In the first investigation involving the May 2010 tickets, Jain located Tinik's phone number on a public database and made one unanswered phone call before labeling the transaction as involving "confirmed fraud." However, Jain's determination was not based solely on this unanswered phone call; she also relied on the suspicious nature of plaintiffs' email address and a series of mismatching information—a Michigan billing address and California phone number, associated with a flight from Texas to Illinois. Additionally, the tickets were purchased a mere 15 hours before the flight departed, which is a factor that is highly indicative of fraud. As explained by Amador and LaForest, if there are enough negative factors known to United and the investigator cannot confirm that the charge is authorized, ticket cancellation is justified.

The FraudNet records do not reflect that United attempted to contact Jarrett-Cooper by phone to authenticate the July 2011 transaction or to reach Barrow by phone to authenticate the August 2011 transaction. However, LaForest testified that it was significant that both of the later transactions were paid for with debit, rather than credit, cards. When investigators locate a cardholder's phone number in a public database, they verify the phone number with the cardholder's bank. Each bank has a different protocol, but they universally refuse to confirm a phone number associated with a debit card because it exposes the customer to a higher level of risk since debit cards are tied directly to the customer's bank account. Thus, while the investigation records do not indicate that any attempts were made to locate phone numbers for Jarrett-Cooper or Barrow, those efforts would have been futile because their respective banks would not confirm that the publicly available phone numbers were accurate. Moreover, like the earlier May 2010 transaction, there were a number of factors involved in the later transactions that lead the fraud investigators to believe they were not legitimately authorized. Plaintiffs used the same iBookHotels email address that had been previously associated with fraud to purchase the July 2011 tickets, and there was a discrepancy between the Michigan billing address and Florida phone number. Additionally, the tickets were for a one-way flight that traveled between two airports with disproportionately high rates of fraudulent activity. The August 2011 tickets were, likewise, purchased with the iBookHotels email address and involved mismatching information concerning the billing address, phone number, and flight route.

Viewing the evidence in the light most favorable to United, the trial court rightfully denied plaintiffs' motion for judgment notwithstanding the verdict because there was sufficient evidence presented to create an issue of fact for the jury. Despite plaintiffs' insistence that

United's conduct was negligent, reasonable jurors could have concluded that United exercised ordinary care when it decided to cancel tickets purchased by plaintiffs. Similarly, the trial court did not abuse its discretion by denying plaintiffs' motion for a new trial because the verdict was not contrary to the great weight of the evidence.

## E. CASE EVALUATION SANCTIONS

Next, plaintiffs challenge the Oakland Circuit Court award of costs and attorney fees to United under MCR 2.403(O). Plaintiffs argue that they were denied due process in the proceedings that led to the court's award and that the court included expenses in its calculation of taxable costs that were not authorized by court rule or statute. Plaintiffs also contend that the court erred by awarding grossly excessive attorney fees, some of which were not necessitated by plaintiffs' rejection of case evaluation. We agree, in part, and disagree, in part.

We review a trial court's award of case evaluation sanctions for an abuse of discretion, which occurs when "the trial court's decision is outside the range of reasonable and principled outcomes."[75] Whether a particular expense is taxable as a cost is a question of law, subject to de novo review.[76] Matters of constitutional law, including issues involving due process, are reviewed de novo.[77]

In pertinent part, MCR 2.403(O)(1) states that "[i]f a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." This matter was submitted to case evaluation on August 18, 2015, and the panel recommended an award of $25,000 in favor of Exclusive Events and zero dollars in favor of Jarrett-Cooper. On September 17, 2015, the parties were notified that the case evaluation award had been accepted by United, but rejected by both plaintiffs. As already noted, the case proceeded to jury trial, which resulted in a verdict of no cause of action in United's favor. Thus, it is undisputed that plaintiffs are responsible for United's actual costs pursuant to the mandatory terms of MCR 2.403(O)(1). For purposes of case evaluation sanctions, actual costs include:

(a) those costs taxable in any civil action, and

(b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation, which may include legal services provided by attorneys representing

---

[75] *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008) (opinion by TAYLOR, C.J.).

[76] *Van Elslander v Thomas Sebold & Assoc, Inc*, 297 Mich App 204, 211; 823 NW2d 843 (2012).

[77] *Baynesan v Wayne State Univ*, 316 Mich App 643, 650; 894 NW2d 102 (2016).

themselves or the entity for whom they work, including the time and labor of any legal assistant as defined by MCR 2.626.[78]

United filed its motion for taxation of costs and case evaluation sanctions on the afternoon of January 13, 2016, and scheduled its motion for hearing one week later, i.e., the minimum amount of time permitted by court rule for a nondispositive motion.[79] For unknown reasons, United's motion was not electronically served until the following day. Thus, plaintiffs were left with only three days to file a timely response. Plaintiffs argue that they were denied due process because the notice they received gave them insufficient time to meaningfully respond to United's motion. They also contend that the court should have held an evidentiary hearing to evaluate the reasonableness of United's requested attorney fees.

The principles of procedural due process are well-settled:

> Generally, due process requires notice and an opportunity to be heard, including some type of hearing before deprivation of a property interest. Additionally, due process generally requires an opportunity to be heard before an impartial decision-maker. Notice must be reasonably calculated to apprise interested parties of the action and allow them the opportunity to present objections. The opportunity to be heard need not encompass a full trial in all situations, but generally requires a hearing that allows a party the chance to know and respond to the evidence.[80]

Plaintiffs do not dispute that they did, in fact, receive notice of the motion on January 14, 2016, and that they attended the motion hearing on January 20, 2016. Before the hearing, they submitted a lengthy response to United's motion, objecting to the nature and extent of United's requested attorney fees and arguing against the propriety of several categories of costs. Plaintiffs also articulated a number of their objections on the record at the motion hearing. In other words, plaintiffs received both actual notice and an opportunity to be heard on the issue of United's request for costs and attorney fees. The trial court was not obligated to hold an evidentiary hearing regarding United's motion to satisfy due process.[81]

Plaintiffs also suggest that their due process rights were implicated because the trial court "virtually ignored" their arguments and adopted United's time records "virtually without question." This position lacks merit, as it is completely unsupported by the record. After the parties presented their oral arguments at the motion hearing, the court said: "Gentlemen, you've extensively briefed this issue. I've read the *briefs*; I read the motion."[82] The court's reference to

---

[78] MCR 2.403(O)(6).

[79] MCR 2.119(C)(1).

[80] *Souden v Souden*, 303 Mich App 406, 413; 844 NW2d 151 (2013) (citations omitted).

[81] *Id*.

[82] Emphasis added.

"briefs" in the plural makes it clear that the court was aware of plaintiffs' arguments and implicitly rejected them by entering an opinion and order finding that United was entitled to a portion of its requested costs and fees. To the extent that there was any uncertainty in this regard, the court recited plaintiffs' arguments in its opinion and order denying plaintiffs' motion for reconsideration and concluded that reconsideration was unwarranted because it did not make a palpable error and because plaintiffs' motion presented the same issues the court had already ruled on by reasonable implication. Moreover, the court ultimately reduced United's requested attorney fees by more than 50%.

Next, plaintiffs argue that the trial court erred by awarding $18,831.15 in costs to United because several categories of expenses included in that figure were not properly taxable as costs. A party entitled to case evaluation sanctions may recover "those costs taxable in any civil action."[83] Pursuant to MCR 2.625(A)(1), "[c]osts will be allowed to the prevailing party in an action, unless prohibited by statute or by these rules or unless the court directs otherwise, for reasons stated in writing and filed in the action." However, the power to tax costs is statutory and a party seeking costs is entitled to recover only those expenses authorized by statute.[84]

Plaintiffs allege that the court erred by awarding costs for the following categories of expenses: mileage; travel expenses and related meals; unidentified expenses; United's case evaluation fee; deposition transcripts; nondeposition transcripts; and unidentified filing fees. Plaintiffs are correct in their assertion that many of these expenses are not properly taxable as costs. This Court has previously held that there is no statutory authority providing for the taxation of an attorney's travel expenses or case evaluation fees.[85] Thus, the trial court erred by including United's case evaluation fee and travel expenses incurred by United's defense team in its award of taxable costs. Likewise, the trial court could not properly award expenses that were unidentifiable. United's billing statements include a total of $9,301.08 for "service fees" payable to Mars Business Group, LLC, and Kaufman & Associates, Ltd. But without any further indication regarding the nature of the expenses, the trial court could not determine whether statutory authority existed for allowing United to recover these expenses as taxable costs.

The remainder of the categories challenged by plaintiffs may be included as taxable costs under appropriate circumstances. With respect to deposition transcripts, MCL 600.2549 states, "Reasonable and actual fees paid for depositions of witnesses filed in any clerk's office . . . shall be allowed in the taxation of costs only if, at the trial or when damages were assessed, the depositions were read in evidence, except for impeachment purposes . . . ."[86] Although several deposition transcripts were filed before trial, only Amador's deposition was read into evidence for purposes other than impeachment. Thus, only the reasonable and actual fees paid for

---

[83] MCR 2.403(O)(6)(a).

[84] *Guerrrero v Smith*, 280 Mich App 647, 670; 761 NW2d 723 (2008).

[85] *Id*. at 673-674.

[86] See also *Elia v Hazen*, 242 Mich App 374, 380-382; 619 NW2d 1 (2000) (disallowing costs of depositions read in evidence but not filed with clerk's office).

Amador's deposition transcript may be taxed as costs under MCL 600.2549. However, United's billing statements include nine entries for transcript fees, and it is unclear which, if any, of the entries correspond to the Amador deposition. Indeed, the only entry for transcript fees that identifies the subject transcript relates to a transcript from the November 17, 2015 trial proceedings. MCL 600.2543 governs transcript fees charged by circuit court reporters and allows recovery of those fees as a taxable cost of the prevailing party, but only if the transcript was obtained for one of the purposes designated in the statute.[87] United's billing statements and other documentary evidence submitted in support of its motion do not identify the purpose for which United obtained the trial transcript. As such, the court erred by including transcript fees in its award of taxable costs.

The final category of costs challenged by plaintiffs is unidentified filing fees. MCL 600.2529 establishes the filing fees payable to a circuit court clerk for various documents, including motions, and Subsection (2) allows the recovery of those fees as taxable costs. Additionally, "[a]ny electronic filing system fee paid by a party is a recoverable taxable cost" under MCL 600.1990. In each of the billing entries associated with United's court filing fees, the entry provides the date and amount of the expense, and a generic description reading, "FILING FEES – OAKLAND COUNTY CIRCUIT COURT." Thus, it is unclear from the billing statement alone which court filing is associated with each fee. However, the dates assigned to the vast majority of these entries correlate to the dates of each of United's court filings, as reflected by the Oakland Circuit Court's register of actions. Only four entries, each in the amount of $8.24, do not have a corresponding filing reflected in the register of actions.[88] With the exception of these four entries, the court did not err by including United's motion and electronic filing fees in its award of taxable costs.

Next, plaintiffs take issue with the amount of attorney fees awarded by the Oakland Circuit Court. The actual costs recoverable as case evaluation sanctions include "a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation . . . ."[89] The phrase "necessitated by rejection of the case evaluation" has been interpreted to require "a causal nexus between the rejection and incurred expenses."[90] Plaintiffs argue that the Oakland Circuit Court erred by awarding attorney fees associated with Smith's deposition and two motions for modification of

---

[87] See MCL 600.2543(2) ("Only if the transcript is desired for the purpose of moving for a new trial or preparing a record for appeal shall the amount of reporters' or recorders' fees paid for the transcript be recovered as a part of the taxable costs of the prevailing party in the motion, in the court of appeals or the supreme court.")

[88] The register of actions does not support United's billings for a February 10, 2015 filing fee, a September 17, 2015 filing fee, one of two September 25, 2015 filing fees, and one of two October 6, 2015 filing fees.

[89] MCR 2.403(O)(6).

[90] *Allard v State Farm Ins Co*, 271 Mich App 394, 402; 722 NW2d 268 (2006), quoting *Haliw v City of Sterling Hts*, 471 Mich 700, 711 n 8; 691 NW2d 753 (2005).

the trial date, which plaintiffs contend arose as a result of factors other than their rejection of case evaluation.

Plaintiffs noticed Smith's deposition to take place in Pennsylvania on August 31, 2015. Citing a scheduling conflict, United filed an emergency motion for a protective order requiring the deposition to be adjourned to a mutually agreeable date. Although the motion was denied, plaintiffs agreed to adjourn the deposition to September 23, 2015, to accommodate United's counsel. Plaintiffs argue that United cannot recover attorney fees associated with this deposition because it would have been conducted before plaintiffs' September 17, 2015 case evaluation rejection but for plaintiffs' willingness to adjourn the deposition for the benefit of United's counsel. We agree. The $2,620 in attorney fees[91] attributable to defense counsel's preparation for and attendance at the Smith deposition cannot be fairly said to flow directly from plaintiffs' case evaluation rejection. While it is true that the deposition would not have proceeded if the case had been settled by way of case evaluation, it is equally true that there would be no basis for holding plaintiffs' liable for these fees had the deposition been conducted as originally scheduled. Under these narrow factual circumstances, requiring plaintiffs' to pay the fees incurred by United in connection with the Smith deposition fell outside the range of principled outcomes. To conclude otherwise would have an unfortunate chilling effect on litigants' inclination to extend professional courtesies and accommodations to their opponents.

In arguing that these fees were properly awarded, United relies primarily on *Ayre v Outlaw Decoys, Inc*,[92] wherein this Court considered the causal nexus required for attorney fees awarded as case evaluation sanctions. In that case, the trial court held one of four plaintiffs liable for the full amount of attorney fees accrued by the defendant's attorney following case evaluation because the other three plaintiffs had accepted their case evaluation awards and continued to trial only as a result of the defendant's rejection of the awards.[93] This Court vacated the trial court's order, holding that the rejecting plaintiff's case evaluation sanctions should be limited to those fees accrued in defending against her theory of liability and her damage claim.[94] This Court observed that a portion of the defendant's attorney fees were attributable to defending against the other plaintiffs' claims and it would be improper to require the rejecting plaintiff to pay for attorney fees that did not directly flow from her rejection and which accrued through no fault of her own.[95] *Ayre* is distinguishable in that it considered how to apportion attorney fees in cases involving multiple litigants with varying case evaluation responses. Here, the issue raised by plaintiffs does not concern apportionment of accrued fees, but rather whether an adjournment

---

[91] The trial court awarded $133 for defense counsel's September 18, 2015 deposition preparation, $55 for emails between attorneys Torpey and O'Connell concerning the deposition, $342 for appearance at the deposition, and $2,090 for time spent traveling to and from the deposition.

[92] *Ayre v Outlaw Decoys, Inc*, 256 Mich App 517; 664 NW2d 263 (2003).

[93] *Id*. at 519-520.

[94] *Id*. at 524.

[95] *Id*. at 528.

of a deposition made to accommodate opposing counsel can be deemed to flow directly from plaintiffs' case evaluation rejection.

Plaintiffs also argue that the attorney fees accrued in connection with two motions to modify the trial date were not necessitated by their rejection of case evaluation. The first motion, filed by plaintiffs, sought adjournment of the trial date because plaintiffs' counsel was experiencing medical problems that interfered with his ability to cope with the physical demands of trial. The second motion, filed by United, sought to move the new trial date forward by several days owing to a scheduling conflict for United's lead trial counsel, again associated with a medical examination. Unlike the Smith deposition, both motions were sufficiently related to plaintiffs' case evaluation rejection to justify the court's inclusion of those fees. By rejecting case evaluation in favor of going to trial, the rejecting party assumes the risk of being held liable for the opposing party's trial expenses.[96] Inherent in that risk is the possibility, and we daresay the probability, that the parties will engage in pretrial motion practice regarding trial matters, including when the trial will take place. The trial court did not abuse its discretion by including attorney fees arising from these motions in its award of case evaluation sanctions.

Lastly, plaintiffs argue that despite having reduced United's requested attorney fees by over 50%, the trial court still abused its discretion by awarding grossly excessive attorney fees based on inflated billings. Plaintiffs point to several examples of what they opine to be excessive hours, including the hours awarded in connection with the first day of trial, plaintiffs' motion to adjourn the trial date, Smith's deposition, and voir dire preparation. Plaintiffs also contend that United's billings included unnecessarily duplicative hours for the involvement of several attorneys and legal assistants.

MCR 2.603(O) permits the prevailing party to recover a *reasonable* attorney fee for services necessitated by the losing party's rejection of case evaluation. The party requesting attorney fees bears the burden of proving the reasonableness of its request.[97] The prevailing standard for evaluating the reasonableness of attorney fees is set forth in *Smith v Khouri*.[98] Pursuant to the framework outlined in *Smith*,

> courts begin by determining the fee customarily charged in the locality for similar legal services. To determine this amount, courts should use "reliable surveys or other credible evidence of the legal market." Then, the reasonable hourly rate should be multiplied by the number of hours that were reasonably expended to reach a baseline figure for a reasonable attorney fee. Courts should make

---

[96] *Van Elslander*, 297 Mich App at 215.

[97] *Smith*, 481 Mich at 528-529 (opinion by TAYLOR, C.J.).

[98] *Cassidy v Cassidy*, 318 Mich App 463, 489; __ NW2d __ (2017), citing *Smith*, 481 Mich 519 (opinion by TAYLOR, C.J.).

adjustments to the figure using the factors from MRPC 1.5(a) and *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982).[99]

None of the examples of allegedly excessive fees cited by plaintiffs are so extreme that we feel compelled to conclude that the court abused its discretion by determining that the hours were reasonable. For instance, on the first day of the trial, the proceedings lasted approximately 7.4 hours, inclusive of recesses. However, United's trial attorneys, Torpey and O'Connell, billed 9 hours and 9.2 hours, respectively, to attend the trial. The court concluded that these hours were reasonable, and that decision does not appear to be outside the range of principled outcomes. Torpey was lead trial counsel and, in addition to actually appearing in court, his billing entry for the first day of trial indicates that his 9 billed hours were also attributable to travel time and in-court set up. O'Connell's billing entry did not indicate that travel time was included in the 9.2 hour entry, but it was reasonable for the trial court to presume so because his travel time was billed separately on other days.

Plaintiffs maintain that United did not satisfy its burden of proving the reasonableness of its requested fees because it relied almost exclusively on its billing statements. However, the judge who determined the reasonableness of United's attorney fees also presided over the case at all relevant times and was therefore familiar with its complexity and the efforts expended by United's attorneys. More importantly, the court excluded considerable time billed by United's attorneys based on its inability to determine the reasonableness of the charges due to redactions in the billing statement.[100] It also excluded all of the hours billed by a legal assistant to attend trial because it determined that the presence of two attorneys and a legal assistant was unnecessary in light of the complexity of the case. By including the remaining, unredacted billing entries in its calculation of reasonable attorney fees, the court implicitly determined that those hours were reasonable. It is also worth noting that this case involved a highly contentious dispute, and the combative gamesmanship employed by both sides undoubtedly lead to increased

---

[99] *Ford Motor Co v Dep't of Treasury*, 313 Mich App 572, 590-591; 884 NW2d 587 (2015) (citations omitted).

[100] In connection with the redactions, the court also observed that United failed to cite any authority allowing it to redact the billing statements. On appeal, United notes that it referred the court to *Augustine v Allstate Ins Co*, 292 Mich App 408; 807 NW2d 77 (2011), at the January 20, 2016 motion hearing. However *Augustine* does not support United's position. This Court found an abuse of discretion where the trial court denied the defendant's discovery request for the plaintiff's litigation file, which was requested for the purpose of verifying the plaintiff's billing statements. *Id*. at 421-422. The trial court refused the request because it would require production of attorney work product, and this Court concluded that a redacted file could be provided. *Id*. at 422. By contrast, in the instant case United redacted information from its billing statements on the basis of the attorney work product qualified privilege. Thus, while *Augustine* certainly provides authority for providing redacted information in support of requested attorney fees in some situations, United bore the burden of proving the reasonableness of its fees and to the extent the redactions left the court unable to determine if the requested fees were reasonable, United was not entitled to recover those fees.

time spent on disputed matters, which is an appropriate factor for the court to consider in determining the reasonableness of requested attorney fees.[101]

In sum, the Oakland Circuit Court erred by allowing United to recover attorney travel expenses, its case evaluation fee, unidentifiable expenses, transcript fees that were not shown to fall within the scope of applicable statutory authority, and electronic filing fees that were not substantiated by reference to the court's register of actions. Only the substantiated motion and electronic filing fees are authorized by statute as recoverable taxable costs. The court also erred by including attorney fees attributable to defense counsel's preparation for and attendance at the Smith deposition in its award of attorney fees. On remand, the Oakland Circuit Court should enter an order taxing costs in the amount of $527.36[102] for those expenses authorized by statute as taxable costs, and awarding reasonable attorney fees to United in the amount of $107,896.[103]

## IV. AIRLINE DEREGULATION ACT PREEMPTION

On cross-appeal, United argues that the Oakland Circuit Court erred by denying United's first motion for summary disposition. According to United, it was entitled to summary disposition because plaintiffs' negligence claim was preempted by the Airline Deregulation Act.[104] We agree.

This Court reviews decisions regarding summary disposition motions de novo.[105] A summary disposition motion brought under MCR 2.116(C)(8) tests the legal sufficiency of the pleadings and should be granted when the opposing party fails to state a claim upon which relief can be granted.[106]

Pursuant to what is commonly known as the Airline Deregulation Act (ADA), "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier . . . ."[107] This express preemption provision was designed to ensure that the states would not undermine Congress's determination that consumers and the economy would be best served by deregulation of interstate air travel, which

---

[101] *Van Elslander*, 297 Mich App at 239. See also *Smith*, 481 Mich at 529 (opinion by TAYLOR, C.J.) ("In Michigan, the trial courts have been required to consider the totality of special circumstances applicable to the case at hand.").

[102] This amount was reached by adding the properly taxable filing fees only.

[103] This amount was reached by subtracting the $2,620 in fees attributable to the Smith deposition from the total amount of fees awarded by the Oakland Circuit Court.

[104] Former 49 USC 1301, *et seq*. The applicable version of the preemption language at issue is codified at 49 USC 41713(b)(1).

[105] *Nuculovic*, 287 Mich App at 61.

[106] *Id*.

[107] 49 USC 41713(b)(1).

would encourage open competition among the airlines.[108] The United States Supreme Court has construed the ADA preemption language as broadly barring any state action having "a connection with or reference to" an airline's prices, routes, or services, even when the state action is not specifically designed to affect those matters.[109] However, it cautioned that airlines are not completely immune from state action and the ADA should not be interpreted to preempt actions that would impact prices, routes, or services in only a tenuous, remote, or peripheral manner.[110] Based upon the Supreme Court's guidance, this Court has held that a claim will be preempted by the ADA if the following is shown: "(1) the claim must derive from the enactment or enforcement of state law, and (2) the claim must relate to airline rates, routes, or services, either by expressly referring to them or by having a significant economic effect on them."[111]

Plaintiffs' negligence claim satisfies the first requirement because actions to enforce "common-law rules fall comfortably within the language of the ADA pre[]emption provision."[112] Thus, whether the ADA preempts plaintiffs' claim depends on whether it relates to United's rates, routes, or services. United contends that plaintiffs' negligence claim was preempted because it expressly referred to United's ticketing policies and procedures, which are "services" for purposes of the ADA. United also argues that if plaintiffs prevailed in their negligence claim, it would have had a significant economic effect on United because United would have to modify its policies and procedures to minimize future liabilities. Plaintiffs, on the other hand, maintain that their negligence claim was premised on United's negligent fraud investigation practices, which are not an integral part of the bargained-for services provided to United's customers.

Michigan courts have yet to consider what constitutes a service for purposes of ADA preemption. Although not precedentially binding, federal caselaw provides some guidance on this point. Recognizing the broad scope of ADA preemption, the majority of federal circuits have adopted an expansive view of the term. For example, in *Hodges v Delta Airlines, Inc*—a case cited by United and plaintiffs—the Fifth Circuit held that an airline's services include "[e]lements of the air carrier service bargain . . . such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself," as opposed to matters that are incidental to the bargain, such as the operation or maintenance of the aircraft itself.[113] Thus, when the plaintiff in *Hodges* was injured by a box that fell from an

---

[108] *Thomas v United Parcel Serv*, 241 Mich App 171, 175; 614 NW2d 707 (2000), citing *Morales v Trans World Airlines, Inc*, 504 US 374, 378; 112 S Ct 2031; 119 L Ed 2d 157 (1992).

[109] *Morales*, 504 US at 384-386.

[110] *Id*. at 390.

[111] *Thomas*, 241 Mich App at 178.

[112] *Northwest, Inc v Ginsberg*, __ US __; 134 S Ct 1422, 1429; 188 L Ed 2d 538 (2014).

[113] *Hodges v Delta Airlines, Inc*, 44 F3d 334, 336 (CA 5, 1995). See also *Tobin v Fed Express Corp*, 775 F3d 448, 453 (CA 1, 2014) (adopting *Hodges* definition of service); *Air Transport Ass'n of America, Inc v Cuomo*, 520 F3d 218, 223 (CA 2, 2008); *Branche v Airtran Airways, Inc*, 342 F3d 1248, 1256-1257 (CA 11, 2003) (same); *Travel All Over the World, Inc v Kingdom of Saudi Arabia*, 73 F3d 1423, 1433 (CA 7, 1996) (same).

overhead compartment midflight, her personal injury claim was not preempted because it related to the safe operation of the flight, rather than economic or contractual features of air transportation.[114] By contrast, several federal courts have determined that tort claims seeking compensation for an airline's refusal of passage to ticketholders due to internal policies implicate elements of the air carrier service bargain and are therefore preempted.[115]

The Seventh Circuit's analysis in *Travel All Over the World, Inc v Kingdom of Saudi Arabia* is particularly instructive because it involves similar underlying facts. The travel agency plaintiff brought suit against an airline when the airline refused to honor tickets the plaintiff had purchase for its clients.[116] The Court noted that the plaintiff's complaint alleged more than "simple cancellation of tickets," as several of the plaintiff's tort claims were premised on "a series of knowingly false verbal and written statements designed to harm the [plaintiff's] valid business interests . . . ."[117] The Seventh Circuit determined that the plaintiff's defamation claim was not preempted, reasoning that

> Saudia's false statements regarding Travel All's services were not part of any contractual arrangement that Saudia had with Travel All or its clients. Thus, the slander and defamation claims do not expressly refer to airline rates, routes, or services. In addition, these claims do not have the "forbidden significant [economic] effect" on airline rates, routes, or services, as contemplated by *Morales*. It is difficult for us to envision how allowing tort claims based on an airline's knowingly false statements about a travel agency would have even a "tenuous, remote or peripheral" economic effect on the rates, routes, or services that the airline offers.[118]

However, the Court took care to distinguish between the plaintiffs' defamation claims and its claims for tortious interference, intentional infliction of emotional distress, and fraud. The Court noted that these tort claims were based, at least in part, on the airline's ticket cancellations, which related to the airline's services, namely, ticketing and transportation.[119] It concluded, "[T]o the extent that the intentional tort claims are based on Saudia's refusal to transport passengers who had booked their flights through Travel All, such claims 'relate to' Saudia's

---

[114] *Hodges*, 44 F3d 334.

[115] See, e.g., *Onoh v Northwest Airlines, Inc*, 613 F3d 596 (CA 5, 2010) (holding that IIED and breach of contract claims, arising from airline's refusal to board a passenger without a valid airport transit visa, were preempted by ADA); *Smith v Comair, Inc*, 134 F3d 254, 259 (CA 4, 1998) ("To the extent [the plaintiff]'s intentional tort claims are premised on [the defendant]'s refusal to permit him to board his flight, we believe they are preempted.").

[116] *Travel All Over the World*, 73 F3d at 1428.

[117] *Id*.

[118] *Id*. at 1433 (alteration in original).

[119] *Id*. at 1434.

services and are preempted by the ADA."[120]  Importantly, in reaching this conclusion, the Court rejected the proposition that actions which were not legitimate exercises of the airline's business judgment should fall outside the scope of ADA preemption.  Instead, the Court emphasized that "[t]he crucial inquiry is the underlying nature of the actions taken, rather than the manner in which they are accomplished."[121]

Following this rationale, plaintiffs' negligence claim relates to United's services and is, therefore, preempted by the ADA.  In their first amended complaint, plaintiffs alleged that United "wrongfully cancelled legitimately purchased tickets, without notice . . . ."  In other words, plaintiffs' negligence claim is based on United's refusal to transport the passengers for whom plaintiffs had purchased tickets.  Thus, it is the very type of claim that *Travel All Over The World* considered to be related to airline services.  Even if we presumed, without deciding, that United was negligent in its fraud investigation, it does not change the fact that plaintiffs are attempting to challenge the process through which United determines whether to permit those who have reserved passage on a flight to board the plane and travel.  There can be little doubt that would-be passengers' access to flights is an element of the air carrier service bargain and, therefore, related to United's services for purposes of the ADA.  Accordingly, the Oakland Circuit Court erred when it denied United's motion for summary disposition with respect to plaintiffs' negligence claim.  However, reversal is not warranted because the error was harmless in light of the jury's later no cause of action verdict in United's favor.[122]

## V.  CONCLUSION

In Docket No. 330248, we vacate the Wayne Circuit Court's order granting United's motion for summary disposition and remand the matter for further proceedings.  We also vacate the Wayne Circuit Court's related order granting United's motion for attorney fees in Docket No. 333353.  In Docket No. 331383, we affirm the Oakland Circuit Court's December 17, 2015 order of no cause of action and its May 22, 2015 opinion and order denying United's motion for summary disposition.  In Docket No. 333836, we vacate the Oakland Circuit Court's May 26, 2016 order granting United taxable costs and attorney fees, and remand this matter to the Oakland Circuit Court for entry of an order consistent with this opinion.

We do not retain jurisdiction.

/s/ Michael J. Talbot
/s/ Peter D. O'Connell
/s/ Thomas C. Cameron

---

[120] *Id*. at 1435.

[121] *Id*. at 1434.

[122] MCR 2.613(A) ("An error . . . in a ruling or order . . . is not ground . . . for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take this action appears to the court inconsistent with substantial justice.").